

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| VERNON HENDERSON, | ) | No. ED100762 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 13SL-AC00490 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Honorable Thomas J. Prebil |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | Filed: June 24, 2014 |

## OPINION

The Director of Revenue appeals the judgment reinstating Vernon Henderson's driving privileges on the ground that Henderson did not refuse to submit to a chemical test of his breath. We reverse and remand.

## I.     BACKGROUND

On December 30, 2012, Henderson was arrested for driving while intoxicated. Subsequently, the Director revoked Henderson's driving privileges for refusing to submit to a urine test to determine the alcohol or drug content of his blood. Henderson then filed a petition for review, and a hearing was held on the petition. At the hearing, the following evidence was presented by the Director.

At about 1:55 a.m. on December 30, 2012, an officer with the Overland Police Department was dispatched to respond to a report of a careless and imprudent driver. When the

officer arrived at the scene, Henderson's vehicle was sitting on top of two large landscaping boulders. Henderson told the officer that he drove onto the boulders after another vehicle had run him off the road.

The officer detected an odor of alcohol coming from Henderson. The officer then asked Henderson to perform some field sobriety tests, and Henderson agreed to perform the horizontal gaze nystagmus test. During the test, Henderson swayed and both of his eyes appeared bloodshot and glassy. Henderson refused to participate in the walk-and-turn test, refused to perform the one-leg-stand test, and refused to submit to a preliminary breath sample at the scene. However, Henderson admitted to the officer that he had one or two beers earlier in the night.

The officer arrested Henderson for driving while intoxicated and transported him to the police department. There, Henderson was advised of Missouri's Implied Consent Law at 3:07 a.m. Henderson acknowledged that he understood, and he agreed to submit to a chemical test of his breath. The results of Henderson's breath test showed that his blood alcohol content ("BAC") was .023%, within the legal limit. The officer then asked Henderson to submit to a urine test, but Henderson refused.

In Henderson's petition for review and at the hearing on the petition, Henderson admitted, through his counsel, the basic facts presented by the Director at the hearing. Namely, Henderson admitted that he was arrested for driving while intoxicated, that he submitted to a chemical breath test resulting in a BAC of .023%, and that he then refused to submit to a urine test. Henderson did not present any evidence at the hearing.

Following the hearing, the trial court entered a judgment removing the Director's revocation of Henderson's driving privileges from his driving record and reinstating the privileges. The trial court found that the arresting officer had probable cause to arrest Henderson

2

for driving while intoxicated, but that Henderson did not refuse to submit to a chemical test of his breath.  The Director appeals.[1]

## II.    DISCUSSION

In his sole point on appeal, the Director argues that the trial court erred in reinstating Henderson's driving privileges on the ground that Henderson did not refuse to submit to a chemical test of his breath.  The Director maintains that although Henderson submitted to a chemical test of his breath, revocation of Henderson's driving privileges was nevertheless appropriate because Henderson subsequently refused to submit to a urine test.  We agree.

### A.    Standard of Review and Applicable Statutes

In reviewing a court-tried case pertaining to the reinstatement of driving privileges, our Court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *White v. Director of Revenue*, 321 S.W.3d 298, 304, 307-08 (Mo. banc 2010).  When, as in this case, a driver has admitted the basic facts of the Director's case and the driver has not "disput[ed] a fact in any manner," the Director's evidence is considered uncontested. *Id*. at 308. "In such cases, the issue is legal, and there is no finding of fact to which to defer." *Id*. Accordingly, the issue of whether the trial court erred in reinstating Henderson's driving privileges is a legal issue that we review de novo. *See id*.

At a hearing regarding the revocation of a driver's license of a driver twenty-one years of age and older due to the driver's refusal to submit to a chemical test, the trial court is limited to determining:  (1) whether the driver was arrested or stopped; (2) whether the arresting officer had reasonable grounds to believe the driver was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether the driver refused to submit to a chemical test.  Section

---
[1] We note that Henderson did not file a Respondent's brief with this Court.

577.041.4 RSMo Supp. 2011.[2]  If the court finds any of those issues not to be in the affirmative, the court must order the Director to reinstate the person's driving privileges.  Section 577.041.5. In the instant case, the trial court's findings that Henderson was arrested and that the arresting officer had reasonable grounds to believe Henderson was driving a motor vehicle while in an intoxicated condition are not disputed on appeal.  The sole issue on appeal is whether the trial court erred in reinstating Henderson's driving privileges on that ground that Henderson did not refuse to submit to a chemical test of his breath.

Pursuant to Missouri's Implied Consent Law, a person who operates a motor vehicle on Missouri public highways implicitly consents to chemical testing to determine the alcohol or drug content of his blood when, as in this case, he is "arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition."  Section 577.020.1(1) RSMo Supp. 2007[3]; *Cortner v. Director of Revenue*, 408 S.W.3d 789, 793 (Mo. App. E.D. 2013).  Section 577.020.1 specifically provides that the driver "shall be deemed to have given consent to . . . a chemical test or tests of the person's breath, blood, saliva or urine . . .." Additionally, "[t]he implied consent to submit to the chemical tests listed in [section 577.020.1] shall be limited to not more than two such tests arising from the same arrest, incident or charge." Section 577.020.2.

**B.      Whether Henderson's Driving Privileges Should have been Reinstated**

In applying sections 577.041 and 577.020 to the instant case and determining whether Henderson's driving privileges should have been reinstated, we find two cases to be instructive: *Giesler v. Director of Revenue*, 139 S.W.3d 216 (Mo. App. E.D. 2004) and *Johnson v. Director*

---

[2] Unless otherwise indicated, all further references to section 577.041 are to RSMo Supp. 2011.
[3] Unless otherwise indicated, all further references to section 577.020 are to RSMo Supp. 2007.

*of Revenue*, 168 S.W.3d 139 (Mo. App. W.D. 2005).[4] The factual scenarios which took place in *Giesler* and *Johnson* are, for all relevant purposes, identical to the situation in this case. Specifically, the driver agreed to take a chemical breath test after being arrested for an alcohol-related offense and being informed of Missouri's Implied Consent Law, the breath test was completed and registered a BAC, the driver subsequently refused to submit to a urine test, the Director revoked the driver's driving privileges for refusing to submit to the urine test, and the trial court overturned the Director's revocation. *Giesler*, 139 S.W.3d at 217-18; *Johnson*, 168 S.W.3d at 140-41. *Giesler* and *Johnson* both held that it was erroneous for the trial court to overturn the Director's revocation under those circumstances because section 577.020.2 specifically permits two chemical tests. 139 S.W.3d at 217-19; 168 S.W.3d at 140-42; *see* section 577.020.2 ((stating that "[t]he implied consent to submit to the chemical tests listed in [section 577.020.1] shall be limited to *not more than two* such tests") (emphasis added)). Accordingly, although a driver successfully completes an initial chemical test listed in section 577.020.1 (a test of the person's breath, blood, saliva, or urine), an officer has a right to request the driver to submit to an additional, second type of chemical test listed in the statute. *Johnson*, 168 S.W.3d at 142; section 577.020.1 and .2. If the driver then refuses to take the second test and the Director has otherwise met his burden of proof for revocation of driving privileges, the Director has the authority to revoke the driver's driving privileges based on the driver's refusal to submit to the second chemical test.[5] *Giesler*, 139 S.W.3d at 217-19.

---

[4] *Giesler* and *Johnson* applied the RSMo 2000 and RSMo Supp. 2003 versions of sections 577.041 and 577.020 respectively, which are substantively similar to the versions applicable in this case. *See Giesler*, 139 S.W.3d at 218-19; *Johnson*, 168 S.W.3d at 140-42; section 577.041; section 577.020.

[5] Sections 577.041.2 and .3 provide that "the [D]irector shall revoke the license of the person refusing to take [a chemical] test for a period of one year" upon receiving an officer's report that, *inter alia*, the officer had "[r]easonable grounds to believe that the arrested person was driving a motor vehicle while in an intoxicated or drugged condition" and "[t]hat the person refused to submit to a chemical test."

In this case, the Director had the authority to revoke Henderson's driving privileges because Henderson refused to submit to the urine test and it is uncontested that the Director otherwise met his burden for revocation. Therefore, the trial court erred in reinstating Henderson's driving privileges. Point granted.

## III.  CONCLUSION

The judgment is reversed and the cause is remanded to the trial court with directions to enter a judgment reinstating the revocation of Henderson's driving privileges.

_____
GLENN A. NORTON, Judge

Roy L. Richter, P.J. and
Clifford H. Ahrens, J., concur

6